## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| ARRAY BIOPHARMA INC., CARRIE S. COX, CHARLES M. BAUM, GWEN A. FYFE, KYLE A. LEFKOFF, JOHN A. ORWIN, SHALINI SHARP, RON SQUARER, GIL J. VAN LUNSEN, PFIZER INC., and ARLINGTON ACQUISITION SUB INC., | ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on June 17, 2019 (the "Proposed Transaction"), pursuant to which Array BioPharma Inc. ("Array" or the "Company") will be acquired by Pfizer Inc. ("Parent") and Arlington Acquisition Sub Inc. ("Merger Sub," and collectively with Parent, "Pfizer").

2.      On June 14, 2019, Array's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Pfizer.  Pursuant to the terms of the Merger Agreement, Merger Sub commenced a tender offer (the "Tender Offer") to acquire all of Array's outstanding common stock for $48.00 per share in cash.  The Tender Offer is scheduled to expire on July 26, 2019.

3.      On June 28, 2019, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Array common stock.

9.      Defendant Array is a Delaware corporation and maintains its principal executive offices at 3200 Walnut Street, Boulder, Colorado 80301.  Array's common stock is traded on the NasdaqGM under the ticker symbol "ARRY."

10.     Defendant Carrie S. Cox is Chairman of the Board of the Company.

11.     Defendant Charles M. Baum is a director of the Company.

12.     Defendant Gwen A. Fyfe is a director of the Company.

13.     Defendant Kyle A. LefKoff is a director of the Company.

14.     Defendant John A. Orwin is a director of the Company.

15.     Defendant Shalini Sharp is a director of the Company.

16.     Defendant Ron Squarer is Chief Executive Officer and a director of the Company.

17.     Defendant Gil J. Van Lunsen is a director of the Company.

18.     The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19.     Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

20.     Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Array (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22.     This action is properly maintainable as a class action.

23.     The Class is so numerous that joinder of all members is impracticable.  As of June 13, 2019, there were approximately 223,095,419 shares of Array common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if

defendants' conduct complained of herein continues.

25.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

28.     Array is a fully integrated biopharmaceutical company focused on the discovery, development, and commercialization of transformative and well-tolerated targeted small molecule drugs to treat patients afflicted with cancer and other high-burden diseases.

29.     The Company markets BRAFTOVI® (encorafenib) capsules in combination with MEKTOVI® (binimetinib) tablets for the treatment of patients with unresectable or metastatic melanoma with a *BRAF*V600E or *BRAF*V600K mutation in the United States and with partners in other major worldwide markets.

30.     The Company's lead clinical programs, encorafenib and binimetinib, are being investigated in over thirty clinical trials across a number of solid tumor indications, including a Phase 3 trial in *BRAF*-mutant metastatic colorectal cancer.

31.     Array's pipeline includes several additional programs being advanced by Array or current license-holders, including the following programs currently in registration trials: selumetinib (partnered with AstraZeneca), LOXO-292 (partnered with Eli Lilly), ipatasertib (partnered with Genentech), tucatinib (partnered with Seattle Genetics), and ARRY-797.

32.     On June 14, 2019, Array's Board caused the Company to enter into the Merger Agreement with Pfizer.

33.     Pursuant to the terms of the Merger Agreement, Merger Sub commenced the Tender Offer to acquire all of Array's outstanding common stock for $48.00 per share in cash.

34.     According to the press release announcing the Proposed Transaction:

Pfizer Inc. (NYSE: PFE) and Array BioPharma Inc. (NASDAQ: ARRY) today announced that they have entered into a definitive merger agreement under which Pfizer will acquire Array, a commercial stage biopharmaceutical company focused on the discovery, development and commercialization of targeted small molecule medicines to treat cancer and other diseases of high unmet need. Pfizer has agreed to acquire Array for $48 per share in cash, for a total enterprise value of approximately $11.4 billion. The Boards of Directors of both companies have approved the merger. . . .

Upon the close of the transaction, Array's employees will join Pfizer and continue to be located in Cambridge, Massachusetts and Morrisville, North Carolina, as well as Boulder, Colorado, which becomes part of Pfizer's Oncology Research & Development network in addition to La Jolla, California and Pearl River, New York.

Pfizer expects to finance the majority of the transaction with debt and the balance with existing cash. The transaction is expected to be dilutive to Pfizer's Adjusted Diluted EPS by $0.04 -$0.05 in 2019, $0.04 -$0.05 in 2020, neutral in 2021, and accretive beginning in 2022, with additional accretion and growth anticipated thereafter. Pfizer will provide any appropriate updates to its current 2019 guidance in conjunction with its third quarter 2019 earnings release.

Under the terms of the merger agreement, a subsidiary of Pfizer will commence a cash tender offer to purchase all outstanding shares of Array common stock for $48 per share in cash for a total enterprise value of approximately $11.4 billion. The closing of the tender offer is subject to customary closing conditions, including regulatory approvals and the tender of a majority of the outstanding shares of Array common stock (on a fully-diluted basis). The merger agreement contemplates that Pfizer will acquire any shares of Array that are not tendered into the offer through a second-step merger, which will be completed promptly following the closing of the tender offer. Pfizer expects to complete the acquisition in the second half of 2019.

Pfizer's financial advisors for the transaction were Guggenheim Securities, LLC, and Morgan Stanley & Co. LLC, with Wachtell, Lipton, Rosen & Katz acting as its legal advisor. Centerview Partners served as Array's exclusive financial advisor, while Skadden, Arps, Slate, Meagher & Flom LLP served as its legal advisor.

35.     The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Section 5.3(b) of the Merger Agreement provides:

The Acquired Corporations shall, and shall use reasonable best efforts to cause their Representatives to, immediately cease any solicitation, knowing encouragement, discussions or negotiations with any Persons that may be ongoing with respect to an Acquisition Proposal as of the date of this Agreement. In addition, except as permitted by this Section 5.3, during the Pre-Closing Period the Acquired Corporations shall not, and shall use reasonable best efforts to cause their Representatives not to, (i) continue any solicitation, knowing encouragement, discussions or negotiations with any Persons that may be ongoing with respect to an Acquisition Proposal as of the date of this Agreement; (ii)(A) solicit, initiate or knowingly facilitate or encourage (including by way of furnishing non-public information) any inquiries regarding, or the making of any proposal or offer that constitutes, or could reasonably be expected to lead to, an Acquisition Proposal, (B) engage in, continue or otherwise participate in any discussions or negotiations regarding, or furnish to any other Person any non-public information in connection with, or for the purpose of soliciting or knowingly encouraging or facilitating, an Acquisition Proposal or any proposal or offer that could reasonably be expected to lead to an Acquisition Proposal or (C) enter into any letter of intent, acquisition agreement, agreement in principle or similar agreement with respect to an Acquisition Proposal or any proposal or offer that could reasonably be expected to lead to an Acquisition Proposal; or (iii) waive or release any Person from, forebear in the enforcement of, or amend any standstill agreement or any standstill provisions of any other Contract, unless, solely in the case of this clause (iii), the

Board of Directors determines in good faith, after consultation with the Company's outside legal counsel, that the failure to do so would be inconsistent with the fiduciary duties of the Board of Directors to the Company's stockholders under applicable Legal Requirements, in which event the Acquired Corporations may take the actions described in this clause (iii) solely to the extent necessary to permit a third party to make, on a confidential basis to the Board of Directors, an Acquisition Proposal, conditioned upon such third party agreeing that the Company shall not be prohibited from providing any information to Parent (including regarding any such Acquisition Proposal) in accordance with, and otherwise complying with, this Section 5.3. As promptly as reasonably practicable (and in any event within two (2) business days) following the date hereof, the Company shall request the prompt return or destruction (to the extent provided for by the applicable confidentiality agreement) of all non-public information previously furnished to any Person (other than Parent) that has, within the one (1)-year period prior to the date of this Agreement, made or indicated an intention to make an Acquisition Proposal and the Company shall, and shall cause the other Acquired Corporations to, terminate access by any third Person who has made or would reasonably be expected to make an Acquisition Proposal (other than Parent and its Representatives) to any data room (virtual or actual) containing any confidential information of any Acquired Corporation.

36.     Additionally, the Company must promptly advise Pfizer of any proposals or inquiries received from other parties.  Section 5.3(d) of the Merger Agreement states:

During the Pre-Closing Period, the Company shall (i) promptly (and in any event within 24 hours) notify Parent if any inquiries, proposals or offers with respect to an Acquisition Proposal are received by any Acquired Corporation or any Representative thereof and provide to Parent a copy of any written Acquisition Proposal (including any proposed term sheet, letter of intent, acquisition agreement or similar agreement with respect thereto) and a summary of any material unwritten terms and conditions thereof, and (ii) keep Parent reasonably informed of any material developments, discussions or negotiations regarding any Acquisition Proposal on a prompt basis (and in any event within 24 hours of such material development, discussion or negotiation).

37.     Moreover, the Merger Agreement contains a "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Pfizer a "matching right" with respect to any "Superior Offer" made to the Company.  Section 6.1(b) of the Merger Agreement provides:

(i) if any Acquired Corporation has received a bona fide written Acquisition Proposal from any Person that has not been withdrawn and after consultation with

outside legal counsel, the Board of Directors shall have determined, in good faith, that such Acquisition Proposal is a Superior Offer, (x) the Board of Directors may make a Company Adverse Change Recommendation, or (y) provided that such Acquisition Proposal did not arise out of a material breach of Section 5.3, the Company may terminate this Agreement pursuant to Section 8.1(e) to enter into a Specified Agreement with respect to such Superior Offer, in each case, if and only if: (A) the Board of Directors determines in good faith, after consultation with the Company's outside legal counsel, that the failure to do so would be inconsistent with the fiduciary duties of the Board of Directors to the Company's stockholders under applicable Legal Requirements; (B) the Company shall have given Parent prior written notice of its intention to consider making a Company Adverse Change Recommendation or terminating this Agreement pursuant to Section 8.1(e) at least three (3) business days prior to making any such Company Adverse Change Recommendation or termination (a "Determination Notice") (which notice shall not constitute a Company Adverse Change Recommendation or termination) and, if desired by Parent, during such three (3)-business day period shall have negotiated in good faith with respect to any revisions to the terms of this Agreement or another proposal to the extent proposed by Parent so that such Acquisition Proposal would cease to constitute a Superior Offer; and (C) (1) the Company shall have provided to Parent information with respect to such Acquisition Proposal in accordance with Section 5.3(d), (2) the Company shall have given Parent the three (3)-business day period after the Determination Notice to propose revisions to the terms of this Agreement or make another proposal so that such Acquisition Proposal would cease to constitute a Superior Offer, and (3) after giving effect to the proposals made by Parent during such period, if any, after consultation with outside legal counsel, the Board of Directors shall have determined, in good faith, that such Acquisition Proposal is a Superior Offer and that the failure to make the Company Adverse Change Recommendation or terminate this Agreement pursuant to Section 8.1(e) would be inconsistent with the fiduciary duties of the Board of Directors to the Company's stockholders under applicable Legal Requirements. Issuance of any "stop, look and listen" communication by or on behalf of the Company pursuant to Rule 14d-9(f) shall not be considered a Company Adverse Change Recommendation and shall not require the giving of a Determination Notice or compliance with the procedures set forth in this Section 6.1. The provisions of this Section 6.1(b)(i) shall also apply to any material amendment to any Acquisition Proposal and require a new Determination Notice, except that the references to three (3) business days shall be deemed to be two (2) business days[.]

38.     The Merger Agreement also provides for a "termination fee" of $400 million payable by the Company to Pfizer if the Individual Defendants cause the Company to terminate the Merger Agreement.

### *The Solicitation Statement Omits Material Information, Rendering It False and Misleading*

39.     Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

40.     As set forth below, the Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.

41.     First, the Solicitation Statement omits material information regarding the Company's financial projections.

42.     With respect to the October 2018 Forecasts, the Solicitation Statement fails to disclose: (i) all line items used to calculate EBIT; (ii) all line items used to calculate unlevered free cash flow; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

43.     With respect to the June 2 Forecasts, the Solicitation Statement fails to disclose: (i) all line items used to calculate EBIT; (ii) all line items used to calculate unlevered free cash flow; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

44.     With respect to the June 14 Forecasts, the Solicitation Statement fails to disclose: (i) all line items used to calculate EBIT; (ii) all line items used to calculate unlevered free cash flow; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

45.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

46.     Second, the Solicitation Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Centerview Partners LLC ("Centerview").

47.     With respect to Centerview's Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; and (ii) the individual inputs and assumptions underlying the rate of free cash flow decline of 80.0%, the 0% perpetuity growth rate, and the range of discount rates from 9.5% to 11.5%.

48.     With respect to Centerview's Analyst Price Target Analysis, the Solicitation Statement fails to disclose: (i) the individual price targets observed by Centerview in the analysis; and (ii) the sources thereof.

49.     With respect to Centerview's Premiums Paid Analysis, the Solicitation Statement fails to disclose the premiums paid in the transactions observed by Centerview in the analysis.

50.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

51.     Third, the Solicitation Statement fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing the counterparties from submitting superior offers to acquire the Company.

52.     Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

53.     The omission of the above-referenced material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: The Solicitation or Recommendation.

54.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### (Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)

55.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

56.     Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

57.     Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

58.     The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

59.     The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

60.     By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

61.     The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

62.     Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

63.     By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

64.     Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

65.     Plaintiff and the Class have no adequate remedy at law.

## COUNT II

### (Claim for Violation of 14(d) of the 1934 Act Against Defendants)

66.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

67.     Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

68.     Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

69.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

70.    Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

71.    The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

72.    Plaintiff and the Class have no adequate remedy at law.

## COUNT III

**(Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants and Pfizer)**

73.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

74.    The Individual Defendants and Pfizer acted as controlling persons of Array within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as directors of Array and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

75.    Each of the Individual Defendants and Pfizer was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

76.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.   The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.   They were thus directly connected with and involved in the making of the Solicitation Statement.

77.     Pfizer also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

78.     By virtue of the foregoing, the Individual Defendants and Pfizer violated Section 20(a) of the 1934 Act.

79.     As set forth above, the Individual Defendants and Pfizer had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

80.     As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

81.     Plaintiff and the Class have no adequate remedy at law.

### **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment and relief as follows:

A.     Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.	In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.	Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.	Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.	Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.	Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: July 1, 2019

**RIGRODSKY & LONG, P.A.**

By:	*/s/ Gina M. Serra*
	Seth D. Rigrodsky (#3147)
	Brian D. Long (#4347)
	Gina M. Serra (#5387)
	300 Delaware Avenue, Suite 1220
	Wilmington, DE 19801
	Telephone: (302) 295-5310
	Facsimile: (302) 654-7530
	Email: sdr@rl-legal.com
	Email: bdl@rl-legal.com
	Email: gms@rl-legal.com

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

*Attorneys for Plaintiff*